UNITED STATES DISTRICT COURT
FOR THE EASTERN DIVISION OF MISSOURI

| RANDEE BLUM, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-02461-HEA |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE AND COMPEL ARBITRATION**

In support of Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.'s ("Merrill Lynch") motion to vacate the "Order and Judgment" entered *ex parte* against it on December 2, 2013 (the "Order"), and to compel arbitration of its dispute with Plaintiff Randee Blum ("Blum" or "Randee"), Defendant Merrill Lynch states as follows:

**INTRODUCTION**

Plaintiff Randee Blum is a proper third-party defendant in a pending arbitration relating to claims that she stole over $600,000 from her mother's brokerage account and authorized allegedly impertinent investments. Rather than acknowledge her proper inclusion in the arbitration and defend Merrill Lynch's claims on the merits, Blum and her attorneys inappropriately filed suit and sought an *ex parte* order over the Thanksgiving holiday weekend, without sufficient notice to Merrill Lynch. By any definition, the Order below was improperly granted and, under governing federal law, it must be vacated.

Moreover, Merrill Lynch's claims against Blum are properly the subject of arbitration both because of her status as her mother's agent, at all times relevant to the underlying dispute,

and pursuant to her own separate agreement to arbitrate all disputes with Merrill Lynch. The Court should compel arbitration.

## BACKGROUND

On July 9, 2013, BettyMae Blum ("BettyMae") filed a Statement of Claim against Merrill Lynch in arbitration before the Financial Industry Regulatory Authority ("FINRA") (the "Arbitration"). In the Arbitration, BettyMae alleges that she appointed her daughter, Randee, "as her agent under a power of attorney." (Not. Removal (Dkt. #1) Ex. E, SOC ¶ 10.) BettyMae further alleges that Randee "took advantage of [BettyMae] by withdrawing massive amounts out of Mrs. Blum's brokerage account." (*Id*. ¶ 11.) According to BettyMae, other than certain funds used for her daily living expenses, "the funds withdrawn by [Randee] were used almost entirely for the benefit of" Randee and her husband, Jeff Balkin. (*Id*.) Randee Blum, it is alleged, "effectively stole the money because Mrs. Blum never gave permission to take the money for her personal benefit." (*Id*. ¶ 12.) BettyMae alleges that these withdrawals totaled over $600,000. (*Id*. ¶ 14.)

On October 7, 2013, Merrill Lynch answered BettyMae's claim and filed a motion in the Arbitration to add Randee as a third party respondent (the "Motion to Add"). (Not. Removal (Dkt. #1) Ex. F, Mot. to Add.) This is not at all unusual and would be considered perfectly normal procedurally in federal court. *See* Fed. R. Civ. P. 14(a)(1) (providing for third-party claims against "a nonparty who is or may be liable to it for all or part of the claim against" the defendant). In her *Emergency Application to Stay Arbitration Against Randee Blum* (the "Application"), Randee Blum admits that she was served with the Motion to Add on November 6, 2013. (Not. Removal (Dkt. #1) Ex. A ¶ 3.) Randee, however, did not simply object to the jurisdiction of the Arbitration Panel or object to Merrill Lynch's motion to add her as a third-

party respondent in the Arbitration. Rather, she chose to file the "emergency" Application and have it heard *ex parte*.

On November 25, 2013, Blum filed the Application in the Circuit Court of St. Louis County. (*Id.*) On November 26th, the Tuesday before Thanksgiving, Blum's counsel prepared a *Notice of Hearing*, stating that the hearing on Blum's Application would be held at 9:30 a.m. on the Monday after Thanksgiving, December 2, 2013. (Not. Removal (Dkt. #1) Ex. B.) Counsel for Blum claims to have served the Application and Notice on Merrill Lynch by delivering a copy to its Clayton, Missouri office on November 26, 2013. (Not. Removal (Dkt. #1) Ex. D, pg 17.) On Wednesday, Blum's attorney apparently also sent an e-mail to Merrill Lynch's counsel (*id.* at Ex. D, pg. 36), but would have immediately received an out-of-office alert, informing him that Ms. LaClair was in mediation and out all week. Counsel apparently made no attempt to ensure that Merrill Lynch's Arbitration counsel received actual notice of the December 2nd hearing. In any event, the Notice was manifestly insufficient under Missouri law.

With no opposition, Randee Blum apparently sailed through the *ex parte* hearing, and obtained the Order stating that "pursuant to Mo. Rev. Stat. § 435.355(2), the Court orders that arbitration against Randee Blum in FINRA Arbitration No. 13-02028 is hereby stayed" and directing Merrill Lynch to "immediately file . . . a notice withdrawing its motion to add Randee Blum as a third-party." (Not. Removal (Dkt. #1) Ex. C.)

Having finally received notice of the Application and Order and obtained Missouri counsel, Merrill Lynch removed the lawsuit to this Court on December 10, 2013. Merrill Lynch moves the Court to vacate the improperly granted Order and compel arbitration of its claims against Randee Blum.

3

## ARGUMENT AND AUTHORITIES

I.   **Motion to Vacate.**

   A.   **Standard of Review.**

This Court has the power to dissolve or modify the Order entered below under 28 U.S.C. § 1450. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local 70*, 415 U.S. 423, 437 (1974) (noting that § 1450 recognizes the "district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal"). Going forward, federal, rather than state, law governs the course of the proceedings, notwithstanding state court orders issued prior to removal. *Id*.

This Court may vacate an order granting an injunction and should do so here where the Order is an improper injunction under federal law. *See, e.g.,* Fed. R. Civ. P. 59. At most, the Order was an improvidently granted temporary restraining order that would expire by its own terms on December 16th (and should, in any event, be vacated). Moreover, even under Missouri procedural law, the Court below lacked the "power" to enter the Order, and it should be vacated as voidable on its face.

   B.   **The Order Was Inappropriately Granted without Proper Notice under Missouri Law and is Voidable on that Basis.**

The Order below was granted at a hearing held only <u>three</u> court days after delivering the Notice, rendering it irregular and voidable. Blum states that she "served" the Notice by delivering it to a Merrill Lynch branch office on Tuesday, November 26, 2013. According to the Application, Blum was seeking relief pursuant to Mo. Rev. Stat. § 435.355(2). Under Missouri procedural law, such an Application shall be heard "upon the notice provided by law or rule of court for the making and hearing of motions." Mo. Rev. Stat. § 435.425 (applying to applications under §§ 435.350 to 435.470). In Missouri, a written motion (unless it may be heard *ex parte*)

and notice of the hearing thereof, "shall be served not later than <u>five days</u> before the time specified for the hearing, unless a different period is fixed by law or court rule or by order of the court." Mo. R. Civ. P. 44.01(d) (emphasis added). These days are calculated by excluding "intermediate Saturdays, Sundays and legal holidays". Mo. R. Civ. P. 44.01(a). A legal holiday includes days when the clerk's office is legally closed. *Heinen v. Healthline Mgmt., Inc.*, 982 S.W.2d 244, 246 (Mo., en banc, 1998). According to its website, the Circuit Court of St. Louis County was closed on Thanksgiving Day, November 28, 2013. http://www.stlouisco.com/LawandPublicSafety/CircuitCourt/HolidaySchedule2013 (last visited 12/11/13). This meant that, under Missouri law, Merrill Lynch was given only three days' advance notice of the hearing -- less than the five days required by Rule 44.01(d).

"Reasonable notice was a prerequisite to the court's power to enter an order in the [movant's] favor." *Sitelines, L.L.C. v. Penstar Corp.*, 213 S.W.3d 703, 707 (Mo. Ct. App. 2007). In this case, not only did Plaintiff Blum violate Rule 44.01(d), the Notice also was not reasonable under the facts and circumstances. It was delivered to Merrill Lynch's branch office just prior to the Thanksgiving holiday, and, even though e-mailed to Merrill Lynch's counsel the next day (two court days prior to the hearing), Blum's counsel was instantaneously informed that Merrill Lynch's counsel was out of state that week. Meanwhile, Blum sought to have the court hear a 47-paragraph application, replete with numerous legal citations, and accompanied by over 50 pages of exhibits, with virtually no notice and without any input -- much less briefing -- by the other side. This was patently unreasonable. A Missouri court would find the Order to be so improper as to be deemed "irregular" and subject to a motion to vacate, even after the regular period for reconsideration ended (which it has not here). *Cf. Thompson v. St. John*, 915 S.W.2d

350, 356-57 (Mo. Ct. App. 1996) (finding order issued without five days' notice to be "irregular" and subject to a motion to vacate within one year).

> **C.       The Order Was Inappropriately Granted, Because Service of Blum's Application and Notice of Hearing was Insufficient.**

Likewise, Blum failed to properly serve Merrill Lynch with the Application and Notice. Rule 54.13 of the Missouri Supreme Court Rules provides that personal service within the state may be made--

> [u]pon a domestic or foreign corporation . . . by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process.

Mo. Sup. Ct. R. 54.13(a)(3).

The registered agent for Merrill Lynch is CT Corporation System, 120 South Central Ave, Clayton, Missouri 63105. This information can be found through a simple online business name search of the Missouri Secretary of State records. Rather than serve Merrill Lynch's registered agent, Blum claims to have properly "served" Merrill Lynch with her Application and Notice of Hearing by delivering a copy of the same to Carol McBride at Merrill Lynch's branch office in Clayton, Missouri. (Not. Removal (Dkt. #1) Ex. D, pg. 17.)

Carol McBride is not an officer, partner, managing or general agent of Merrill Lynch. Nor can she be said to be the person authorized to accept service of process, or ever "having charge" (by appointment or otherwise) of the Clayton, Missouri branch office. Rather, she is a clerical employee of Merrill Lynch, who works at the front desk of its Clayton, Missouri branch office. As a clerical employee, Ms. McBride could only "receive service of process on behalf of [Merrill Lynch] *if, in fact, [she] was in charge of the office at the time of service*." *Kitchens v. Missouri Pacific Railroad Co.*, 737 S.W.2d 219, 222 (Mo. Ct. App. 1987) (emphasis supplied).

Because she was not, service of Blum's Application and Notice on Merrill Lynch was insufficient. In turn, the Order was inappropriately granted for this additional reason.

  D. **The Order is Not Proper under Federal Law.**

Because this case has been removed, the Order must be analyzed under federal law. *See Granny Goose*, 415 U.S. at 437; *see also Metro N. State Bank v. Gaskin*, 34 F.3d 589, 592 (8th Cir. 1994) (applying Fed. R. Civ. P. 56 to review a grant of summary judgment). Under that law, the Order is not a proper injunction and was similarly granted without appropriate notice or service of process. At most, it might be considered an improperly granted *ex parte* temporary restraining order, which would expire on its own terms on December 16, 2013.

To enter any sort of injunction against Merrill Lynch, Plaintiff Blum was required to provide <u>14 days</u>' notice. Fed. R. Civ. P. 6(c)(1). This simply was not done.

Moreover, in order to justify preliminary injunctive relief enjoining an arbitration, the court should weigh (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1060 (8th Cir. 2012). There is no indication that there was any evidence presented as to these factors, much less that the court weighed them in granting relief. The court simply decided, based upon the one-sided presentation hurriedly made to it by Blum that "there was no agreement" to arbitrate. As shown below, this finding was incorrect and, in fact, Blum should be compelled to arbitrate her dispute with Merrill Lynch.

Based on the record below, it appears that -- at most -- the Order entered was an improper *ex parte* temporary restraining order under Fed. R. Civ. P. 65(b). However, even the requirements for a TRO were not met. There were no "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to

7

the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Blum's attorney also did not certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). And, the Order did not merely attempt to maintain the "status quo"; rather, it sought to impose affirmative duties upon Merrill Lynch.

Finally, even if interpreted as an *ex parte* TRO, under Rule 65(b)(2), the Order should expire by its own terms after 14 days, or by December 16, 2013. *Cf. Granny Goose*, 415 U.S. at 438 (noting that the subject of the restraining order "had a right to the protections of the time limitation in Rule 65(b) once the case was removed to the District Court").

## II.  Motion to Compel Arbitration.

### A.  Standard of Review.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA" or the "Act")) is applicable to motions to compel arbitration in federal court. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Under the Act, a written arbitration provision within a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable". 9 U.S.C. § 2. (That the transactions involved commerce under § 2 is not in dispute in this matter.) If the Court is satisfied that the dispute is subject to arbitration, then it must stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement". *Id*. § 3. Additionally, the FAA authorizes the Court to issue an order compelling arbitration when one party has failed, neglected, or refused to comply with the arbitration agreement. *Id*. § 4.

The FAA reflects a "congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), requiring that the Court "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The role of the Court is limited to determining

whether the dispute is one that is covered by the agreement. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649-50 (1986). Accordingly, arbitration is allowed unless the Court can say with "positive assurance" that the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650 (internal quotation marks omitted). "Doubts should be resolved in favor of coverage." *Id.* (internal quotation marks omitted).

### B. Merrill Lynch's Third-Party Claims against Blum are Subject to Arbitration Under the FAA.

There are two arbitration agreements that could be construed as covering Merrill Lynch's third-party claims against Randee Blum -- (1) the agreement relating to the account of BettyMae, on which Randee was an attorney-in-fact and agent of BettyMae; and (2) Randee Blum's own agreement, made when she opened her separate cash management account, to arbitrate "ANY CONTROVERSIES THAT MAY ARISE WITH" Merrill Lynch. (Not. Removal (Dkt. #1) Ex. A, pg 83.)

#### 1. Randee Blum, as Attorney-in-Fact for (and Agent of) BettyMae, is Bound by the Arbitration Agreement Governing BettyMae's Account.

Randee Blum, as BettyMae's agent, is bound by the arbitration clause signed by BettyMae. It is undisputed that BettyMae and her account are governed by an agreement requiring arbitration. BettyMae's contract provided that

> all controversies that may arise between us shall be determined by arbitration. Such controversies include, but not limited to, those involving any transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on or subsequent to the date hereof.

(Not. Removal (Dkt. #1) Ex. D, pg. 146 at 12, MFA Client Agmt.); Exhibit "1", Declaration of Records Custodian, Deanna G. Manion ("Manion Declaration"), at ¶ 3. It is further undisputed that Randee Blum was BettyMae's "agent and attorney-in-fact . . . under a power of attorney

9

dated 5/1/2007". (Not. Removal (Dkt. #1) Ex. D, pg. 160, POA.); Exhibit "1", Manion Declaration, at ¶ 8.

It is well-settled under the FAA that when a "principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (citing cases). This rule is applied in many circuits, including the Eighth. *See, e.g., Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006) (citing *Pritzker* but finding no showing of agency); *Johnson v. Scott*, No. 4:08CV1001HEA, 2008 WL 4488984, *3 (E.D. Mo. Sept. 29, 2008) (finding arbitration to compass claims where "Plaintiffs allege Defendant Scott and the Trill Companies were acting on behalf of, and as agent for, Lil Boosie").

Merrill Lynch's third-party claims -- if the arbitration panel grants its motion to add Randee Blum as a third-party respondent -- arise directly from her actions as BettyMae's agent and attorney-in-fact when "giv[ing] instructions to [Merrill Lynch] with respect to [BettyMae's] account." (Not. Removal (Dkt. #1) Ex. D, pg. 160, POA.) That is, BettyMae has alleged that funds were "stolen" from her based on the instructions given Merrill Lynch by Randee. Merrill Lynch seeks to assert claims against Randee Blum that she may be responsible for all or part of the claims brought against it. These claims are subject to the arbitration clause quoted above.

### 2. Randee Blum Separately Agreed to Arbitrate "All" Controversies That May Arise Between Her and Merrill Lynch.

In the alternative, and only if the Court finds that Randee Blum is not bound by the arbitration agreement above, Merrill Lynch asserts that she has separately agreed to arbitrate "all controversies" that may arise between her and Merrill Lynch, regardless of whether they relate only to her CMA Account. In 1999, Blum signed a CMA Account Application and Agreement Form (the "CMA Agreement"). (Not. Removal (Dkt. #1) Ex. A, pg 83.); Exhibit "1", Manion

Declaration, at ¶ 4. When signing the CMA Agreement, Blum specifically acknowledged "**THAT IN ACCORDANCE WITH PARAGRAPH 10 OF THE AGREEMENT I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU**". Section 10 of the CMA Agreement goes on to state,

> **AGREEMENT TO ARBITRATE CONTROVERSIES WITH MLPF&S**
>
> . . .
>
> **I agree that all controversies which may arise between us, including <u>but not limited to</u> those involving any transaction <u>or</u> the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. . .**

(Not. Removal (Dkt. #1) Ex. A, pg 83. § 10 (emphasis added).) By its explicit terms, this agreement to arbitrate is <u>not</u> limited to the CMA account. Rather, it relates to "all controversies" and these include "but are not limited to" those involving "<u>any</u> transaction". (*Id.* (emphasis added).) As a matter of federal law, any doubts concerning the scope of this arbitration clause should be resolved in favor of arbitration. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) ("Arbitration may be compelled under a broad arbitration clause as long as the underlying factual allegations simply touch matters covered by the arbitration provision." (internal quotation marks and alterations omitted)). In sum, the Court should compel Blum to stand by the agreement she made to arbitrate "all controversies" between her and Merrill Lynch, including the underlying dispute.

## **CONCLUSION**

Randee Blum is subject to a binding agreement to arbitrate Merrill Lynch's third-party claims arising from her alleged actions while acting as the agent and attorney-in-fact on BettyMae Blum's brokerage account. Rather than respond or object to Merrill Lynch's motion in

the Arbitration to add her as a third-party respondent, Blum inappropriately sought a hearing on an "emergency" Application with only three days' notice over a holiday. The *ex parte* Order Blum obtained was improper and should be vacated. Moreover, Blum should be required to arbitrate the parties' dispute, as provided by the parties' agreement.

DATED December 13, 2013.

Respectfully submitted,

/s/ Eric D. Martin
Eric D. Martin, #47558MO
Jason A. Kempf, #59897MO
BRYAN CAVE LLP
211 North Broadway, Suite 3600
Saint Louis, MO 63102
(314) 259-2000 (Telephone)
(314) 259-2020 (Facsimile)
eric.martin@bryancave.com
jason.kempf@bryancase.com

-AND-

*Of Counsel:*

Tara A. LaClair, (*pro hac vice* to be filed)
Christopher Staine, (*pro hac vice* to be filed)
CROWE & DUNLEVY
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, OK 74103-3313
(405) 235-7700
(405) 239-6651 (Facsimile)
tara.laclair@crowedunlevy.com
christopher.staine@crowedunlevy.com

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated*

**CERTIFICATE OF SERVICE**

      I hereby certify that I have filed the within and foregoing document through the CM/ECF system on this 13th day of December 2013, and that a copy will be delivered to counsel of record for all parties in this action who are registered with the CM/ECF system.

                                                         /s/ Eric D. Martin_____